UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIRIETH WEST,<br><br>*Plaintiff*,<br><br>v.<br><br>ROBERT DE BLOCK, et al.,<br><br>*Defendants*. | **Memorandum and Order**<br><br>Civil Action No. 3:17-cv-08894-PGS-DEA |

Presently before the Court are summary judgment motions filed by the Defendants/Third-Party Plaintiffs (ECF No. 25) and the Third-Party Defendant (ECF No. 24). This is a personal injury case involving an injury Plaintiff sustained while at a church-related hayride and bonfire event in Blairstown, New Jersey. This Court has diversity jurisdiction under 28 U.S.C. § 1332. For the reasons stated herein, the Defendants/Third-Party Plaintiffs' summary judgment motion is denied, except that of Phebe De Block whose motion is granted, and the Third-Party Defendant's motion is granted.

The parties in this case are: Plaintiff, Lirieth West ("Plaintiff"); Defendants/Third-Party Plaintiffs, Samuel Robert De Block[1] and Eugenia De Block, who are husband and wife (the "De Blocks"), and Phebe De Block (Robert's mother); and Third-Party Defendant, Calvary Bible Church of East Stroudsburg, Inc. ("Calvary").

---

[1] "Samuel Robert De Block" is Mr. De Block's full name, but he goes by his middle name, "Robert." (*See* Deposition of Samuel Robert De Block 10:10-15, Mar. 20, 2019, Ex. H to Del Bove Cert., ECF No. 25-12). As such, he will be referred to as "Robert."

1

There are no facts alleging that Phebe De Block was involved in any manner with the incident at issue in this case. Therefore, Phebe De Block's summary judgment motion is granted.

I.

Plaintiff Lirieth West resides in East Stroudsburg, Pennsylvania, and was a parishioner at Calvary at the time of the incident at issue here. (Compl. ¶ 1, ECF No. 1).

Calvary is a Christian church located in East Stroudsburg, Pennsylvania. (Calvary Statement of Material Facts ("Calvary SOMF") ¶ 14, ECF No. 24-1). Calvary is also a 501(c)(3) non-profit corporation incorporated in the Commonwealth of Pennsylvania. (Calvary SOMF ¶ 10).

The De Blocks own, operate, and reside at a 4.7-acre commercial farm in Blairstown, New Jersey, where Plaintiff sustained her injuries. (De Block Statement of Material Facts ("De Block SOMF") ¶ 5, ECF No. 25-2); (*see* Pl.'s Counterstatement of Material Facts ("PCSOMF") ¶ 3, ECF No. 31). Robert is a farmer while his wife, Eugenia, is a housewife and occasional farmer. (PCSOMF ¶ 3). The De Blocks are longtime parishioners of Calvary, and Robert De Block has served as a member of Calvary's Board of Elders, the church's spiritual governing board, for several years. (De Block SOMF ¶ 16).

For the past several years, Calvary has sponsored an autumn social outing (the "Fellowship Event") at the De Blocks' farm in Blairstown. (*Id.* ¶¶ 7-11). The Fellowship Event was free of charge and consisted of a hayride followed by a bonfire. (*Id.* ¶¶ 5, 11). The purpose of the event is to allow for Calvary's parishioners and their families, as well as a few non-Calvary members, to socialize with one another outside of a normal church setting. (*Id.* ¶ 6). The parties dispute the exact year in which the Fellowship Event was first held, but it appears that the event began in the

mid-to-late 2000s, and occurred almost annually thereafter, including 2015, the year in question. (*See* PCSOMF ¶ 3).

The incident at issue took place at the Fellowship Event on the evening of October 25, 2015. (De Block SOMF ¶ 5). The event began at approximately 5:30 p.m. and ended around 10:00 p.m. (*See id.* ¶ 17). Roughly fifty to sixty people were in attendance, and most people in attendance, including Plaintiff, were not farmers and did not possess farming experience. (PCSOMF ¶ 3). The event had been advertised in Calvary's bulletin, and the Pastor announced the event to the congregation during church services for a few weeks leading up to the event. (De Block SOMF ¶ 9).

There were multiple wagons hitched to tractors for the hayride. (PCSOMF ¶ 1). Each wagon had hay spread along the floor, and bales of hay were used as seats on the wagons as well as for steps onto and off the wagons. (*Id.* ¶¶ 1, 3). Robert De Block provided and loaded all the bales of hay. (*Id.* ¶ 3); (*see* Robert De Block Dep. 36:24-25, 63:12-18). The dimensions of the hay bales were 14 inches x 18 inches x 33 inches. (PCSOMF ¶ 3); (De Block SOMF ¶ 20). The bales of hay were not secured and could easily move if someone stepped on them. (PCOSMF ¶ 3). Robert De Block and other Calvary parishioners set up the wagons and tractors for the hayrides, while Eugenia De Block assisted with the bonfire setup. The Fellowship Event attendees did not sign any liability waivers for the activities.

Plaintiff attended the Fellowship Event with her then-husband and their three children. (De Block SOMF ¶ 13). Plaintiff wore UGG boots to the event. (*See* Deposition of Lirieth West 141:21-22, Mar. 19, 2019, Ex. 10 to Del Bove Cert., ECF No. 25-10). Plaintiff was seated in a red wagon hitched to a John Deere tractor for the hayride. (De Block SOMF ¶ 27).

At approximately 6:15 p.m., before the hayride began, however, and while the wagon and tractor were still idle, Plaintiff attempted to descend from the wagon as she needed additional blankets. As she turned herself backward to step down from the wagon onto a bale of hay that was being used as a step (*id.*), Plaintiff alleges that as she put her left leg down, the hay bale moved, causing her to fall backwards and strike the ground with her back and head. (*Id.*). Few people, if any, witnessed the fall, but many attendees saw Plaintiff on the ground immediately afterward. (*Id.* ¶¶ 9, 10, 12, 13).

After she fell, Plaintiff alleges that she lost consciousness for an unknown period of time and vaguely remembers the hayride or events thereafter. (PCSOMF ¶ 2). Neither an ambulance nor any emergency medical service was called. (De Block SOMF ¶ 43). Despite the fall, Plaintiff returned to the wagon and participated in the hayride and the bonfire. (*See* West Dep. 153-159). After she left the event, Plaintiff claims that she went to a hospital in East Stroudsburg, Pennsylvania, where she received medical care. (*Id.* at 164:17-20). Plaintiff alleges that she sustained numerous physical injuries to her head, neck, ankle, and back, as well as mental and emotional injuries. (Compl. ¶ 16).

Plaintiff filed a one-count complaint on October 23, 2017, suing the De Blocks for negligence. The complaint asserts that the De Blocks negligently caused Plaintiff her injuries because they failed to provide a proper secured step to board and exit the wagon; failed to provide an attendant to assist boarding and exiting the wagon; failed to warn her about stepping onto the hay bale; and failed to adhere to state, local, and industry standards for steps and hand rails. (PCSOMF ¶ 1); (*see* Compl. ¶¶ 17-29). The De Blocks, on the other hand, allege that although no specific individual was assigned to assist people board and alight the wagons, other assistance was provided. (De Block SOMF ¶ 21). The parties agree that Robert De Block provided to the

4

attendees verbal safety instructions about this conduct during the hayride, but the content of the instructions he provided is disputed. (PCSOMF ¶ 3); (De Block SOMF ¶ 25).

The De Blocks subsequently filed a Third-Party Complaint against Calvary[2] for common law contribution and indemnification arising out of Plaintiff's injuries, alleging, chiefly, that Calvary sponsored and organized the event. (Third-Party Compl., ECF No. 15). Plaintiff has not asserted any claims against Calvary. The De Blocks and Calvary both assert immunity from any tort liability under New Jersey's Charitable Immunity Act, N.J. Stat. Ann. § 2A:53A-7, *et seq.*

II.

Summary judgment is appropriate under Fed. R. Civ. P. 56 when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 93-94 (3d Cir. 2018). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's

---

[2] This Court exercises diversity jurisdiction over the De Blocks and Calvary since they are citizens of different states. *See N.H. Ins. Co. v. Diller*, 678 F. Supp. 2d 288, 293 n.3 (D.N.J. 2009) ("Under Fed. R. Civ. P. 14, it is not required that diversity of citizenship exist between the third-party defendant and the [original] plaintiff, or that diversity of citizenship exist between defendant, as third-party plaintiff, and the third-party defendant.") (citing *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 169 (3d Cir. 1999)).

evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also Ullrich v. United States Secy. of Veterans Affairs*, 457 F. App'x 132, 136 (3d Cir. 2012) ("[T]he party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record."). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring the non-moving party to set forth specific facts showing that there is a genuine issue for trial).

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48; *Greenfield*, 880 F.3d at 93. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor - that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007).

### III.

In determining the parties' liabilities, the Court must decide whether New Jersey or Pennsylvania law applies to the case. Plaintiff argues that Pennsylvania law applies while the De Blocks and Calvary contend that New Jersey law applies. If New Jersey law applies, then New

Jersey's Charitable Immunity Act will govern Plaintiff's claim; yet, if Pennsylvania law applies, then the claim will proceed under a traditional tort law analysis, because Pennsylvania has no charitable immunity statute.

"[I]n a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case." *Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Choice-of-law analyses are made on an "issue-by-issue basis," and, here, the Court is confronted with the issue of charitable immunity. *See P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143, 962 A.2d 453, 460 (2008).

The first step in a choice-of-law analysis is to determine whether an actual conflict exists between the potentially applicable laws. *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 373 (D.N.J. 2019); *In re Accutane Litigation*, 235 N.J. 229, 254, 194 A.3d 503, 517 (2018); *Camp Jaycee*, 197 N.J. at 143. If no conflict exists, a district court sitting in diversity applies the law of the forum state. *Mills*, 406 F. Supp. 3d at 373; *Accutane*, 235 N.J. at 254; *Camp Jaycee*, 197 N.J. at 143.

If, however, a conflict exists that may alter the outcome of the case, the court must then determine which state has the "most significant relationship" to the claim at issue by weighing the factors set forth in the Restatement (Second) of Conflict of Laws (1971). *Mills*, 406 F. Supp. 3d at 373; *Accutane*, 235 N.J. at 254, 257; *Camp Jaycee*, 197, at 144-45. The most-significant-relationship test "embodies all the elements of [the State's] former governmental-interest test and adds a series of other factors deemed worthy of consideration." *Accutane*, 235 N.J. at 257.

On the issue of charitable immunity, an actual conflict exists between the laws of Pennsylvania and New Jersey because of the New Jersey Charitable Immunity Act, which bars negligence claims against beneficiaries of non-profit corporations organized exclusively for

religious, charitable, or educational purposes. *See* N.J. Stat. Ann. 2A:53A-7. Conversely, Pennsylvania abolished the doctrine of charitable immunity. *See Flagiello v. Pennsylvania Hospital*, 208 A.2d 193 (Pa. 1965).

New Jersey law is presumed to apply because in actions involving "personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties[.]" Restatement (Second) of Conflict of Laws § 146 (1971). "That presumption may be overcome if some other state has a more significant relationship with the parties and the occurrence based on an assessment of each state's contacts viewed through the prism of section 145 [of the Restatement], which sets forth general principles for tort actions, and section 6, which lists overarching choice-of-law principles." *Accutane*, 235 N.J. at 259 (citation and internal quotation marks omitted).

Under section 145, the Court may consider the following contacts:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145(2).

Here, the place of the relationship between the parties is based in Pennsylvania. Calvary consistently holds services at its church in East Stroudsburg throughout the year. The Fellowship Event was an extension of church services. It is held for only a few hours out of the year at the De Blocks' farm in New Jersey.

8

Furthermore, Calvary is incorporated in Pennsylvania, and Plaintiff is domiciled in Pennsylvania. "Whether a charitable corporation can successfully assert the defense of charitable immunity may be determined by the local law of the state where the plaintiff is domiciled and the defendant incorporated rather than by the local law of the state where conduct and injury occurred." Restatement (Second) of Conflict of Laws § 145 cmt. d (1971). It is true that the De Blocks are New Jersey residents, but they regularly attend services at Calvary in Pennsylvania.

The Charitable Immunity Act was passed by New Jersey legislature. "[I]t is elementary that laws enacted by a state legislature must be assumed to apply only to institutions which are either incorporated in or located within that state. Liberal construction of the statute which is prescribed by N.J. Stat. Ann. § 2A:53A–10 does not alter this assumption." *Feniello v. Univ. of Pennsylvania Hosp.*, 558 F. Supp. 1365, 1368 (D.N.J. 1983). In *Feniello*, the New Jersey District Court held that the Charitable Immunity Act was inapplicable to a Pennsylvania hospital where the plaintiff was a New Jersey resident, suing for medical malpractice. *Id.* at 1367. The court reasoned that New Jersey did not have a great interest in applying its own law to protect a Pennsylvania corporation "at the expense of a New Jersey resident plaintiff." *Id.* (citing *Wuerffel v. Westinghouse Corp.*, 148 N.J. Super. 327, 335, 372 A.2d 659, 663 (Law Div. 1977)).

In *Camp Jaycee*, the New Jersey Supreme Court determined that Pennsylvania law applied where the plaintiff's parents sued the defendant on behalf of their daughter after she was sexually assaulted at a Pennsylvania summer camp. *Camp Jaycee*, 197 N.J. at 136-37. The *Camp Jaycee* court determined that Pennsylvania law applied even though the camp was incorporated in New Jersey. Pennsylvania was the *only* location in which the defendant operated its summer camp, and thus the camp was a permanent fixture of that location, making Pennsylvania the camp's principal place of business. *Id.* at 146-47.

Unlike the summer camp in *Camp Jaycee*, the De Blocks' farm is not a permanent fixture of the church. Although Plaintiff's injury occurred at the De Blocks' farm, Plaintiff's injury in New Jersey is fortuitous because New Jersey bears little connection to the relationship of the parties. Plaintiff testified it was her first time attending the Fellowship Event, is originally from Panama, and had never been on a hayride before. (*See* West Dep. 122:9-11; 248:16).

The Pennsylvania Supreme Court abrogated the doctrine of charitable immunity decades ago because it believed that charitable immunity "tends to foster neglect while liability tends to induce care and caution." *Flagiello*, 417 Pa. at 505. The concurring opinion in the court's landmark decision abolishing charitable immunity noted that "[p]ersonal injury is no less painful, disabling, costly or damage producing simply because negligent harm is inflicted in or by a charitable institution rather than a non-charitable one. It should be no more protected by law." *Flagiello*, 417 Pa. at 518 (Roberts, J., concurring); *see Nolan v. Tifereth Israel Synagogue of Mount Carmel, Pa. Inc.*, 425 Pa. 106, 108-109, 227 A.2d 675, 676 (1967).

Much of the conduct causing Plaintiff's injury occurred in Pennsylvania. As Plaintiff avers, the "genesis" of the event and planning of the event transpired at a Board of Elders meeting at Calvary's church in which the board asked Robert De Block whether the event could be held at the farm. (*See* Pl.'s Br. in Response to Calvary's Summ. J. Mot. 23, 25, ECF No. 31). In addition, the Fellowship Event was advertised in the church's bulletin, which was distributed in the church; and Calvary's Pastor announced the event during church services. (De Block SOMF ¶ 9).

Pennsylvania's ties to the occurrence and the parties are strong. The choice-of-law analysis is a close one, but favors Pennsylvania as having the predominant interest on the issue of charitable immunity. Neither the De Blocks, nor Calvary, are entitled to the protection of New Jersey's Charitable Immunity Act.

IV.

The next question is whether the De Blocks are liable for Plaintiff's injury. Because there are genuine disputes of fact about whether the De Blocks breached their duty owed to Plaintiff while she was on their farm, summary judgment is denied. The Court applies New Jersey premises liability law as it is similar to that of Pennsylvania.[3]

To establish a cause of action for negligence under New Jersey law, a plaintiff must prove four elements: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 221 N.J. 36, 51, 110 A.3d 52, 61 (2015) (citation omitted). A landowner generally has a non-delegable duty to use reasonable care to protect invitees against known or reasonably discoverable dangers. *Dawson v. Bunker Hill Plaza Assocs.*, 289 N.J. Super. 309, 317, 673 A.2d 847, 851, cert. denied, 146 N.J. 569, 683 A.2d 1164 (1996).

The duty owed by an occupier of land to third persons coming on that land involves an inquiry identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and considerations of public policy. *Brunson v. Affinity Fed. Credit Union*, 199 N.J. 381, 403, 972 A.2d 1112, 1124 (2009) (citation omitted). New Jersey common law has developed well-defined categories based on the status of the plaintiff: invitee, licensee, or trespasser. *See Estate of Desir ex rel. Estiverne v. Vertus*, 214 N.J. 303, 316, 69 A.3d 1247, 1254 (2013). If the plaintiff falls into one of the predetermined categories, then the category itself establishes the duty, and the Court need not weigh the above factors to determine if a duty is owed. *See Rowe v. Mazel Thirty, LLC*, 209 N.J. 35, 45, 34 A.3d 1248, 1254 (2012) ("The common law categories [of invitee, licensee, and

---

[3] The Court rejects De Blocks' argument that the Landowners' Liability Act, N.J. Stat. Ann. § 2A:42A-3, applies because the Fellowship Event was not open to the public, and Plaintiff was an invited guest on the De Blocks' property. The De Blocks cannot claim immunity under the Act.

trespasser] are a shorthand . . . for the duty analysis; they, too, are based on the relationship of the parties, the nature of the risk, the ability to exercise care, and considerations of public policy. The only difference is that . . . the duty analysis has already been performed[.]").

In this case, Plaintiff and the De Blocks agree that Plaintiff was an invitee[4] on the De Blocks' farm at the time of her injury. The duty a landowner owes to an invitee is that of reasonable care to guard against any dangerous conditions on his property that the owner either knows about or should have discovered. *Rowe*, 209 N.J. at 44. That standard of care also includes the duty to conduct a reasonable inspection to discover latent dangerous conditions. *Id.*

The De Blocks contend that they owed no duty to warn Plaintiff of the "open and obvious risks" associated with boarding and exiting the wagon for the hayride. (De Block Moving Br. 18). The De Blocks cite the proposition that landowners are not required "to protect the invitee against dangers which are known to him, or which are so apparent that he may reasonably be expected to discover them . . . ." *Lokar v. Church of the Sacred Heart, Mount Ephraim*, 24 N.J. 549, 552, 133 A.2d 12, 14 (1957) (citation omitted). The De Blocks also maintain that Plaintiff assumed the risk of any injury when she elected to participate in the hayride.

At the outset, the defense of assumption of risk is not recognized in New Jersey in normal negligence actions. *See Cordy v. Sherwin Williams Co.*, 975 F. Supp. 639, 647 (D.N.J. 1997) ("Assumption of risk and contributory negligence are no longer valid defenses under New Jersey law, and thus those defenses will be dismissed."). Moreover, there are genuine disputes of material fact about whether the De Blocks failed to exercise reasonable care in preventing risks of harm to the Plaintiff, and whether Plaintiff was aware of the attendant dangers of the wagons and hay bales.

---

[4] An "invitee comes by invitation, express or implied, generally for some business purpose of the owner." *Rowe*, 209 N.J. at 43; *see Weber v. United States*, 991 F. Supp. 694, 699 (D.N.J. 1998).

For example, the parties dispute the content of the safety instructions Robert De Block provided to the attendees regarding wagon safety. The parties also contend whether assistance was provided to Plaintiff and others in boarding and exiting the wagons. "Liability in the ordinary case will depend on the jury's resolution of the questions of breach of duty and proximate causation, which usually involve questions of fact that should not be decided by a court as a matter of law." Dennis A. Drazin, *New Jersey Premises Liability* 52 (2020 ed.) (citing *Arvanitis v. Hios*, 307 N.J. Super. 577, 705 A.2d 355, 357 (App. Div. 1998)). These disputed material facts demonstrate that the De Blocks' liability for Plaintiff's injuries is a question of fact for a jury to decide. Accordingly, the De Block's summary judgment motion is denied.

## VI.

The final issue in this case concerns the liability, if any, of Third-Party Defendant, Calvary Bible Church. In the De Blocks' Third-Party Complaint against Calvary, the De Blocks claim common law contribution and indemnification against Calvary, alleging that Plaintiff's injuries were caused in whole or in part by the negligent acts of Calvary. (*See* Third-Party Compl.). Specifically, the De Blocks assert that Calvary was "a beneficiary, organizer, and/or planner" of the Fellowship Event, and "provided materials, goods, and services" including the hay bales that injured Plaintiff. (Third-Party Compl. ¶¶ 3-4).

It is generally recognized that a party will not be liable for common law contribution or indemnification unless it is primarily liable for some independent wrong. *Stearns & Foster Bedding Co. v. Franklin Holding Corp.*, 947 F. Supp. 790, 812 (D.N.J. 1996); *see Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield*, 49 F. Supp. 2d 728, 740 (D.N.J. 1999). A cause of action for contribution arises "when two or more persons become liable in tort to the same person for the same harm." *Stearns & Foster*, 947 F. Supp. at 812 (quoting Restatement (Second)

of Torts § 886A(1) (1977)) (quotation marks omitted). Indemnity comes into play "if two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both." *Id.* (quoting Restatement (Second) of Torts § 886B(1) (1977)) (quotation marks omitted). "It is settled that indemnity may not ordinarily be obtained by a party who has been at fault." *Cartel Capital Corp. v. Fireco of New Jersey*, 81 N.J. 548, 566, 410 A.2d 674, 683 (1980).

In this case, the facts demonstrate that Calvary is not a joint tortfeasor. There is no dispute that the Fellowship Event was held on the De Blocks' farm. Importantly, the De Blocks have not presented facts to suggest that Calvary supplied the wagons, tractors, hay bales, and other farm equipment used on the De Blocks' farm during the event and that allegedly caused Plaintiff's injuries. Although the De Blocks assert in their Third-Party Complaint that Calvary supplied the materials, equipment, and goods for the Fellowship Event, the De Blocks fail to cite to any evidence to support their contention. In fact, Robert De Block's deposition testimony demonstrates that it was he who provided the bales of hay for use as seats on the wagons as well as for use as steps onto and off of the wagons. (Robert De Block Dep. 36:24-25, 63:12-18).

Furthermore, the fact that the event was advertised in the church's bulletin, and during church services, (*see* De Block SOMF ¶ 9), is immaterial because Plaintiff's injury occurred on the De Blocks' farm through the use of the De Blocks' farming equipment. Therefore, the facts reveal that Calvary was not a joint tortfeasor in this case, and as such, Calvary's summary judgment motion is granted.

## ORDER

This matter, having come before the Court on summary judgment motions filed by the De Blocks, Defendant/Third-Party Plaintiffs (ECF No. 25), and Calvary Bible Church of East Stroudsburg, Inc., Third-Party Defendant (ECF No. 24), and the Court having carefully reviewed

and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 30th day of September 2020,

**ORDERED** that the De Blocks' Motion for Summary Judgment (ECF No. 25) is **DENIED**; and it is further

**ORDERED** that Calvary Bible Church of East Stroudsburg, Inc.'s Motion for Summary Judgment (ECF No. 24) is **GRANTED**; and it is further

**ORDERED** that Phebe De Block's Motion for Summary Judgment (ECF No. 25) is **GRANTED**.

                                               *[signature]*
                                               ————————————————
                                               PETER G. SHERIDAN, U.S.D.J.